UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SANDRA CISKE and DANIEL
CISKE, and their marital
community,

  Plaintiffs,

 v.

HOUSE OF BLUES CONCERTS,
INC.; STARPLEX
CORPORATION; CROWD
MANAGEMENT SYSTEMS, a
wholly owned subsidiary of
Starplex, Inc.,

  Defendants.

NO.  CV-06-3085-RHW
(Consolidated)

**ORDER DENYING IN PART,
GRANTING IN PART MOTION
TO STRIKE *INTER ALIA***

DANIEL CISKE and SANDRA
CISKE, and their marital
community,

  Plaintiffs,

 v.

KEN MacDONALD; KLICKITAT
COUNTY; MARYHILL WINERY;
MARYHILL WINERY
AMPHITHEATER, LLC;
STARPLEX CORPORATION;
CROWD MANAGEMENT
SYSTEMS; a wholly owned
subsidiary of Starplex, Inc.,

  Defendants.

  Before the Court are Defendant Klickitat County's Motion for Summary

Judgment (Ct. Rec. 68) and Motion for Joinder in Defendant Ken MacDonald's

**ORDER DENYING IN PART, RESERVING IN PART MOTION TO
STRIKE *INTER ALIA*  \* 1**

1  Motion to Strike (Ct. Rec. 161).  Also before the Court are Defendant Ken

2  MacDonald's Motion for Summary Judgment (Ct. Rec. 74), Motion to Strike (Ct.

3  Rec. 152), Motion to Expedite Regarding Motion to Strike (Ct. Rec. 178), Motion

4  to Expedite Regarding Overlength Brief (Ct. Rec. 180), and Motion for Leave to

5  File Excess Pages (Ct. Rec. 182).  Currently pending are also several motions

6  offered by and against Defendants House of Blues, Maryhill Winery, and Maryhill

7  Amphitheatre (Ct. Recs. 48, 84, 112, 144, 146, 165, 171, & 174).  Those parties

8  settled their claims with Plaintiffs, so those motions are denied as moot.   A

9  hearing was held on April 15, 2008.  Plaintiff Daniel Ciske was present and

10  represented by Timothy Ford and Katherine Chamberlain.  Jerry Moberg appeared

11  on behalf of Defendant Klickitat County, and Michael McFarland appeared on

12  behalf of Defendant Ken MacDonald.

13  **I.      Motion to Strike**

14  Because the Court's holding on MacDonald's Motion to Strike (Ct. Rec.

15  152) could affect its reasoning on the remaining motions, the Court addresses this

16  motion first.  Defendant MacDonald, joined by Klickitat County, moves the Court

17  to strike certain evidence offered in support of Plaintiffs' statement of facts.

18  Under Federal Rule of Civil Procedure 56(e), an affidavit supporting or opposing

19  summary judgment must "set out facts that would be admissible in evidence[.]"

20  Fed. R. Civ. P. 56(e)(1).  MacDonald submits that a number of documents attached

21  to Plaintiffs' counsel's declaration should be stricken because they were not

22  properly authenticated, they are inadmissible character evidence, they are hearsay,

23  and/or they are not relevant or speculative.[1]  Plaintiffs objected to this motion's

24

25       [1]  In particular, MacDonald asks the Court to strike Exhibits 32, 33, 40, 41,

26  42, 43, 44, 45, 48, 58, and 61-65 to the Declaration of Timothy Ford because they

27  have not been properly authenticated; Exhibits 40, 41, 42, 43, 44, 47, 48, 49, 56,

28  58, 59, 61-65, and portions of 29 and 54 because they contain inadmissible

**ORDER DENYING IN PART, RESERVING IN PART MOTION TO STRIKE *INTER ALIA* * 2**

1  length and to MacDonald's request to hear it on an expedited basis.  The Court

2  opts to consider the motion as filed and in conjunction with the summary judgment

3  motions.

4  **A.   Authenticity**

5  The Ninth Circuit has "repeatedly held that unauthenticated documents

6  cannot be considered in a motion for summary judgment." *Orr v. Bank of Am., NT

7  & SA*, 285 F.3d 764, 773 (9th Cir. 2002). "Authentication is a special aspect of

8  relevancy concerned with establishing the genuineness of evidence." *Id.* at 773

9  n.7.  In a summary judgment motion, documents may be authenticated through

10  personal knowledge or through any manner permitted by Federal Rule of Evidence

11  901(b) or 902.  *Id.* at 774 (citing Fed. R. Evid. 901(b) (providing ten approaches to

12  authentication); Fed. R. Evid. 902 (self-authenticating documents need no

13  extrinsic foundation)).  The documents "must be 'attached to an affidavit that

14  meets the requirements of [Fed. R. Civ. P.] 56(e) and the affiant must be a person

15  through whom the exhibits could be admitted into evidence.'"[2] *Id.* (citation

16  omitted).

17  Documents produced in discovery by an opposing party are deemed

18  authentic when offered by the party-opponent. *Id.* at 777, 777 n.20.  Additionally,

19  "when a document has been authenticated by a party, the requirement of

20

---

21  character evidence; Exhibits 32, 33, 40, 41, 42, 43, 44, and 61-65 because they are

22  inadmissible hearsay; and Exhibit 33 because it is not relevant, it is inadmissible

23  opinion testimony, and it is speculative.

24  [2] The Court notes that the personal knowledge requirement only applies to

25  documents sought to be admitted by being attached to an affidavit. *Orr*, 285 F.3d

26  at 778 n.24.  Documents attached to an exhibit list, for instance, "could be

27  authenticated by review of their contents if they appear to be sufficiently genuine."

28  *Id.* (citations omitted).

**ORDER DENYING IN PART, RESERVING IN PART MOTION TO STRIKE *INTER ALIA*  \* 3**

1    authenticity is satisfied as to that document with regards to all parties, subject to
2    the right of any party to present evidence to the ultimate fact-finder disputing its
3    authenticity." *Id.* at 776.

4         Plaintiffs responded to this motion by filing an affidavit which establishes
5    that the documents whose authenticity was challenged were offered by either
6    Klickitat County or MacDonald in discovery. It does not appear from the briefing
7    that MacDonald or Klickitat County challenges the genuineness of these
8    documents. Accordingly, the Court denies the motion to strike Exhibits 32, 33,
9    40, 41, 42, 43, 44, 45, 48, 58, and 61-65 to the Declaration of Timothy Ford on the
10   basis of authentication.

11   **B.    Character Evidence**

12        MacDonald next asks the Court to strike certain evidence because it is
13   inadmissible character evidence pursuant to Federal Rule of Evidence 404(b).
14   Rule 404(b) states that "evidence of other crimes, wrongs, or acts is not admissible
15   to prove the character of a person in order to show action in conformity therewith.
16   It may however be admissible for other purposes, such as motive, opportunity,
17   intent, preparation, plan, knowledge, identity, . . . ." Fed. R. Evid. 404(b).
18   MacDonald submits that this rule mandates exclusion of prior employee
19   reprimands and alleged misconduct. He argues that evidence regarding the
20   character of a witness is only admissible pursuant to Rules 607, 608, and 609.

21        Rule 608 permits opinion and reputation evidence of character for
22   truthfulness or untruthfulness, but does not allow the introduction of extrinsic
23   evidence to prove specific instances of conduct that illustrate the witness's
24   character. Fed. R. Evid. 608. Rule 609 precludes the introduction of prior
25   convictions that are more than ten years old except under certain circumstances.

26

27

28

**ORDER DENYING IN PART, RESERVING IN PART MOTION TO
STRIKE *INTER ALIA* * 4**

1  Fed. R. Evid. 609.  MacDonald also cites to Rule 403[3] in support of exclusion of

2  the exhibits listed.  The evidence MacDonald seeks to exclude on this basis

3  includes his prior employee reprimands, his prior convictions for DUI and minor

4  in possenssion in the 1980's, and other evidence of alleged misconduct.

5      As the Court stated at the hearing, it appears Plaintiffs offer the evidence

6  regarding MacDonald's history of reprimands by his then-employer, Klickitat

7  County Sheriff's Office, not to prove his character or to show action in conformity

8  therewith, but instead to prove motive (as to MacDonald) and knowledge (as to

9  Klickitat County).  The Court finds that the evidence regarding MacDonald's

10  convictions from the 1980's, his terminations from jobs before being hired by

11  Klickitat County, and any reprimands for alleged misconduct after the incident

12  involving Plaintiffs are not admissible for those purposes.  Therefore, page 15 of

13  Exhibit 29, Exhibit 44, page 7 of Exhibit 49, and Exhibit 58 to the Declaration of

14  Timothy Ford are stricken.

15      However, the Court notes that the record is not well developed regarding the

16  remaining allegations of misconduct and reprimands.  As it mentioned at the

17  hearing, the Court cannot ascertain from the record as it now stands whether the

18  evidence apart from the Sheriff's Office's official letters of reprimand (Exhibits

19  40, 42, & 43) would be admissible under Rule 403.  Therefore, the Court reserves

20  ruling on the motion to strike the remaining exhibits and portions thereof on this

21  basis.

22      **C.      Hearsay**

23

24      [3] Rule 403 states "[a]lthough relevant, evidence may be excluded if its

25  probative value is substantially outweighed by the danger of unfair prejudice,

26  confusion of the issues, or misleading the jury, or by considerations of undue

27  delay, waste of time, or needless presentation of cumulative evidence." Fed. R.

28  Evid. 403.

**ORDER DENYING IN PART, RESERVING IN PART MOTION TO STRIKE *INTER ALIA* * 5**

1    MacDonald seeks to strike another group of exhibits because he asserts they

2    are inadmissible as hearsay.  This evidence relates to the arrest and acquittal of

3    Plaintiff Daniel Ciske and to MacDonald's employment history with the Klickitat

4    County Sheriff's Office.  MacDonald asserts that this evidence is offered to prove

5    the truth of the matter asserted and thus constitutes inadmissible hearsay.

6    MacDonald submits that Exhibit 33, which is the transcript of Judge Brian

7    Altman's ruling for acquittal in Mr. Ciske's criminal trial, is inadmissible hearsay,

8    as are Mr. Ciske's booking summary sheet and the records in MacDonald's

9    administrative file.

10    Hearsay is "a statement other than one made by the decalarant while

11    testifying at the trial or hearing, offered in evidence to prove the truth of the matter

12    asserted." Fed. R. Evid. 801(c).  The Court's conclusion that the records from

13    MacDonald's personnel file are being offered to show motive and knowledge

14    likewise illustrates that those records are not hearsay, for they are not being

15    offered to show the truth of the matter asserted.  *See* Fed. R. Evid. 801.  This

16    leaves Exhibit 33, the transcript of Judge Altman's ruling for acquittal in Mr.

17    Ciske's criminal trial.

18    The Ninth Circuit has found that a prior judgment is "hearsay to the extent

19    that it is offered to prove the truth of the matters asserted in the judgment." *United*

20    *States v. Boulware*, 384 F.3d 794, 805-06 (9th Cir. 2004), *cert. denied* 546 U.S.

21    814 (2005).

22    It is even more plain that the introduction of discrete judicial
factfindings and analysis underlying the judgment to prove the truth

23    of those findings and that analysis constitutes the use of hearsay. The
concern about evidence that is neither based on personal knowledge

24    nor subject to cross-examination, which explains an ultimate
judgment's treatment as hearsay, . . . is even more pronounced when

25    dealing with statements that recapitulate in detail others' testimony
and declarations. We therefore agree with the Fourth, Tenth, and

26    Eleventh Circuits that judicial findings of facts are hearsay,
inadmissible to prove the truth of the findings unless a specific

27    hearsay exception exists.

28    *United States v. Sine*, 493 F.3d 1021, 1036 (9th Cir. 2007) (internal citation

**ORDER DENYING IN PART, RESERVING IN PART MOTION TO
STRIKE *INTER ALIA* * 6**

1    omitted).  Plaintiffs have not submitted any specific hearsay exception which

2    would render Exhibit 33 admissible.  Therefore, the Court grants MacDonald's

3    motion to strike Exhibit 33 to the Declaration of Timothy Ford on this basis.

4    **II.    Motions for Summary Judgment**

5        **A.    Standard of Review**

6        Summary judgment is appropriate if the "pleadings, depositions, answers to

7    interrogatories, and admissions on file, together with the affidavits, if any, show

8    that there is no genuine issue as to any material fact and that the moving party is

9    entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "When the moving

10   party has carried its burden of [showing that it is entitled to judgment as a matter

11   of law], its opponent must do more than show that there is some metaphysical

12   doubt as to material facts.  In the language of [Rule 56], the nonmoving party must

13   come forward with 'specific facts showing that there is a *genuine issue for trial*.'"

14   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)

15   (quoting Fed.R.Civ.Pro. 56(e)) (emphasis in original) (internal citations omitted).

16   If the nonmoving party fails to make such a showing for any of the elements

17   essential to its case for which it bears the burden of proof, the trial court should

18   grant the summary judgment motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

19   (1986).  When considering a motion for summary judgment, a court should not

20   weigh the evidence or assess credibility; instead, "the evidence of the non-movant

21   is to be believed, and all justifiable inferences are to be drawn in his favor."

22   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

23       **B.    Facts**

24       The facts below are undisputed unless otherwise indicated.  All of the

25   claims against the Defendants in this matter arise out of the same series of events.

26       On September 17, 2004, Plaintiffs Daniel and Sandra Ciske and a friend,

27   Emily Leslie, attended the Willie Nelson concert at the Maryhill Winery.  Mr.

28   Ciske was a 59-year-old insurance agent with no criminal record at that time.

**ORDER DENYING IN PART, RESERVING IN PART MOTION TO
STRIKE *INTER ALIA* * 7**

1  Defendant Deputy Ken MacDonald was a Klickitat County Sheriff's Deputy

2  working security at the concert.  Klickitat County asserts MacDonald was off-duty

3  that evening and working for Maryhill, Starplex, and/or Crowd Management

4  Systems.  Plaintiffs argue that he was in uniform performing law enforcement

5  duties, and that he was working for the Maryhill Winery with the knowledge and

6  permission of Klickitat County at the time he arrested Mr. Ciske and prosecuted

7  Mrs. Ciske.

8         Patrons of the concert were required to park some distance away from the

9  Winery, and buses were provided to take them back to their cars after the concert

10  ended.  There were only eight buses available to serve about 4,000 concert-goers.

11  Consequently, many concert attendees had to wait for a considerable amount of

12  time in the rain.  At the end of the show, Plaintiffs decided to walk to their car

13  rather than wait for the bus.

14         As they were walking, Mrs. Ciske was stopped by a security guard and told

15  she could not walk any further.  She responded that there was no law against

16  walking, and, when she saw her husband still walking in front of her, she

17  continued walking.  According to Mrs. Ciske, at that point Dan Lasswell (a Crowd

18  Management Systems (CMS) employee) appeared in front of her, put his hands on

19  her chest, and stopped her.  She responded by asking him "what the hell" he was

20  doing.  Mr. Ciske heard the commotion, turned around, and saw Lasswell with his

21  hands on Mrs. Ciske's chest, and possibly breasts, so he yelled at him to "get your

22  fucking hands off my wife or I will kick your ass."[4]

23         Deputy MacDonald then stepped in, and he yelled something to Mr. Ciske

24

_____

25         [4] Many facts relate to the interaction between MacDonald and Mr. Ciske.

26  However, Mr. Ciske settled his claims with both Klickitat County and MacDonald.

27  The only remaining claims are those between Mrs. Ciske and Defendants Klickitat

28  County and MacDonald.

**ORDER DENYING IN PART, RESERVING IN PART MOTION TO STRIKE *INTER ALIA* * 8**

1  about repeating what Mr. Ciske had said to Lasswell. Mr. Ciske did repeat his

2  threat, and MacDonald then told Mr. Ciske he was under arrest. Plaintiffs assert

3  that MacDonald provoked this verbal exchange. Plaintiffs also assert he arrested

4  Mr. Ciske without probable cause.

5       MacDonald attempted to restrain Mr. Ciske by placing an arm behind his

6  back, but Ciske spun away from him and a scuffle ensued. Plaintiffs characterize

7  the "scuffle" as an assault. During the scuffle, assault, or arrest, Plaintiffs state

8  that MacDonald knocked Mr. Ciske to the ground, purposely hit his head against a

9  rough stone surface, and pulled his arms behind his back, injuring his knees, face,

10  and shoulders. Mr. Ciske was also sprayed with pepper spray by an assisting

11  deputy, Deputy Kaley. Plaintiffs assert that when MacDonald arrested Mr. Ciske,

12  he claimed to be exercising his police powers as a Klickitat County deputy.

13       Klickitat County asserts that MacDonald contended during the scuffle that

14  Mrs. Ciske was grabbing at his jacket in an attempt to pull him away from Mr.

15  Ciske, so he cited her for obstruction of justice. Plaintiffs dispute that MacDonald

16  contended Mrs. Ciske grabbed his jacket at that time, and they submit he did not

17  cite Mrs. Ciske for obstruction of justice until later. Plaintiffs state that, at the

18  scene of the incident, MacDonald did not cite or charge Mrs. Ciske, or even ask

19  for her identification. MacDonald states that Mrs. Ciske became very upset and

20  began yelling aggressive language at the time of the arrest. Plaintiffs assert that

21  Mrs. Ciske had no physical contact with MacDonald during the arrest. Lasswell

22  eventually pushed Mrs. Ciske to the ground and handcuffed her, injuring her in the

23  process.

24       Plaintiffs assert MacDonald only charged Mrs. Ciske with obstruction after

25  she went to the Klickitat County Sheriff's Office and complained about his

26  misconduct. She and her friend, Ms. Leslie, went to the Sheriff's Office

27  immediately from Maryhill Winery to see about Mr. Ciske, and two deputies took

28  pictures of the injuries to her hand and the injuries and bruises on her hips and

**ORDER DENYING IN PART, RESERVING IN PART MOTION TO STRIKE *INTER ALIA* \* 9**

1  legs.  During this process, MacDonald took Mrs. Ciske's identification, later

2  returning with a citation charging her with obstruction of justice.  The citation

3  issued by MacDonald stated that Mrs. Ciske "attacked me grabbing at my jacket

4  and trying to pull me off her husband."  MacDonald and two other witnesses

5  testified at trial that Mrs. Ciske jumped on his back when he was trying to gain

6  control over Mr. Ciske.  However, Mrs. Ciske and two other witnesses testified

7  that she did not.  The citation of Mrs. Ciske initiated a criminal prosecution for a

8  gross misdemeanor.

9        Mrs. Ciske did not file a written complaint at the Sheriff's Office that night

10  because she decided to speak to her attorney first.  Nothing was done to

11  investigate her complaints.  Plaintiffs submit that Klickitat County's Rules of

12  Conduct require its employees to promptly record a citizen complaint in writing

13  and submit it to his or her supervisor, but Klickitat County disputes this

14  characterization of the policy.  Klickitat County states that, even though a

15  Sergeant spoke to Mrs. Ciske about filing a complaint, she refused to do so, and

16  she did not tell him she wanted to pursue one against MacDonald.

17        After Mr. Ciske was in custody, Plaintiffs note that it was apparent both he

18  and Mrs. Ciske had been injured.  Plaintiffs assert they were both injured as a

19  result of MacDonald's actions.  Klickitat County disputes this and notes that Mrs.

20  Ciske testified that her injuries were caused when she was pushed to the ground by

21  CMS employee Lasswell.  MacDonald had Mr. Ciske booked on a felony assault

22  charge.  Mr. Ciske remained in jail for the weekend as a result of the felony

23  charge.  The Klickitat County Prosecuting Attorney filed misdemeanor charges

24  against Mr. Ciske in lieu of felony charges, however.

25        Plaintiffs state that, because of his misconduct record, MacDonald stood to

26  lose his job because of his "mistreatment" of Mr. Ciske.  Plaintiffs cite to several

27  incidents in MacDonald's record in their statement of facts, including three

28  separate letters of reprimand.  They state that, as a result of an earlier incident in

**ORDER DENYING IN PART, RESERVING IN PART MOTION TO STRIKE *INTER ALIA*  \* 10**

1  which he used excessive force, MacDonald was suspended for three days on

2  October 22, 2003, and that he was told that another such incident could result in

3  his termination.  Plaintiffs maintain that MacDonald therefore knew that Mrs.

4  Ciske's complaint about his misconduct could cost him his job, but Defendants

5  assert this is inadmissible speculation.

6         Mrs. Ciske challenged her citation in court and went to trial, where she

7  asserted the defense of self or others as a defense.  She was acquitted on the

8  obstruction charge, and the jury determined that any use of force was lawful and

9  she was protecting her family.  Plaintiffs include in their statement of facts both of

10  their testimony of what they recalled transpired that night, along with the

11  testimony of their friend, Ms. Leslie, who was accompanying them, and the

12  closing arguments of their attorney.  All parties also submit the jury instructions.

13         At the time of the incident, Plaintiffs note that the Sheriff of Klickitat

14  County was Chris Mace, a friend of MacDonald.  Plaintiffs state he was a "close,

15  personal friend," but Klickitat County disputes this characterization and submits

16  they had a relationship similar to Sheriff Mace's relationship with other deputies.

17  Plaintiffs submit several incidents of misconduct or alleged misconduct from

18  MacDonald's employment of which Sheriff Mace was aware.  Klickitat County

19  clarifies and objects to the inclusion of these incidents in the record, as does

20  MacDonald.  Plaintiffs also submit comments about misconduct by and Sheriff

21  Mace's favoritism of MacDonald.  MacDonald left the Klickitat County Sheriff's

22  Office in September 2007.

23         **C.    Analysis**

24              **1.    Claims Under § 1983**

25         Plaintiff Sandra Ciske asserts the same claims against both Defendants

26  Klickitat County and Ken MacDonald: § 1983, malicious prosecution, and

27  derivative and consortium claims.  MacDonald's and Klickitat County's motions

28  address only the § 1983 and state law malicious prosecution claims.

**ORDER DENYING IN PART, RESERVING IN PART MOTION TO STRIKE *INTER ALIA*  * 11**

1   Section 1983 creates a cause of action against any person who, acting under

2   color of state law, violates the constitutional rights of another person.  42 U.S.C. §

3   1983; *Mabe v. San Bernardino County, Dep't of Public Soc. Serv.*, 237 F.3d 1101,

4   1106 (9th Cir. 2001).  To succeed on a § 1983 claim, Plaintiff must show that (1)

5   the conduct complained of was committed by a person acting under color of state

6   law; and (2) the conduct deprived her of a constitutional right.  *Long v. County of*

7   *Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

8           **a.     Fourth Amendment Claim**

9           Mrs. Ciske first alleges that Defendants violated her Fourth Amendment

10   right to be free from an unreasonable seizure of her person.  A Fourth Amendment

11   seizure occurs when a person is held in custody by arresting officers.  *Karam v.*

12   *City of Burbank*, 352 F.3d 1188, 1193 (9th Cir. 2003).  Defendant MacDonald

13   argues that Mrs. Ciske was never taken into custody, and that the issuance of a

14   criminal citation does not amount to a constitutional "seizure."  Case law supports

15   this conclusion.  *See Britton v. Maloney*, 196 F.3d 24, 29-30 (1st Cir. 1999)

16   (holding that "[a]bsent any evidence [plaintiff] was arrested, detained, restricted in

17   his travel, or otherwise subject to a deprivation of his liberty before the charges

18   against him were dismissed, the fact that he was given a date to appear in court is

19   insufficient to establish a seizure within the meaning of the Fourth Amendment.")

20   (cited with approval in *Karam*, 352 F.3d at 1193); *see also Martinez v. Carr*, 479

21   F.3d 1292, 1299 (10th Cir. 2007) (finding that "the issuance of a citation, even

22   under threat of jail if not accepted, does not rise to the level of a Fourth

23   Amendment seizure").  Although the Ninth Circuit has not reached the exact issue

24   present here, it came close in *Karam*, in which it found that pretrial release

25   conditions that required the plaintiff to "show up for court appearances and obtain

26   permission from the court if she wanted to leave the state" were "*de minimus*" and

27   did not constitute a Fourth Amendment seizure.  352 F.3d at 1194.

28           Plaintiffs argue that the above-cited holdings do not preclude her

**ORDER DENYING IN PART, RESERVING IN PART MOTION TO
STRIKE *INTER ALIA* * 12**

1    constitutional claim under the Fourth Amendment.  They direct the Court to

2    Justice Ginsburg's concurring opinion in *Albright v. Oliver*, 510 U.S. 266, 278-79

3    (1994) (Ginsburg, J. concurring); in which she explains that common law regarded

4    "the difference between pretrial incarceration and other ways to secure a

5    defendant's court attendance as a distinction between methods of retaining control

6    over a defendant's person, not one between seizure and its opposite."  However,

7    this not controlling precedent, and there has since been published a Ninth Circuit

8    case that contradicts Plaintiffs' desired interpretation.  *Karam, supra*.

9        The parties do not dispute that MacDonald issued Mrs. Ciske a citation

10   only, nor do they dispute that she was never taken into custody.  Therefore, there

11   is no genuine issue of material fact regarding Mrs. Ciske's Fourth Amendment

12   claim.  Accordingly, regardless of MacDonald's motivation for citing Mrs. Ciske,

13   no constitutional seizure occurred and there is no cognizable claim under § 1983

14   for a Fourth Amendment violation against Defendant MacDonald or Defendant

15   Klickitat County.  The Court grants Defendants summary judgment on this claim.

16                  **b.    Fourteenth Amendment Claim**

17       Next, Mrs. Ciske alleges that Defendants "caused her to be prosecuted" by

18   issuing her a criminal citation without probable cause and based upon "knowingly

19   false statements."  This is in essence a constitutionally-based malicious

20   prosecution claim.

21       "To prevail on a § 1983 claim of malicious prosecution, a plaintiff 'must

22   show that the defendants prosecuted [him] with malice and without probable

23   cause, and that they did so for the purpose of denying [him] equal protection or

24   another specific constitutional right.'"  *Awabdy v. City of Adelanto*, 368 F.3d

25   1062, 1066 (9th Cir. 2004) (quoting *Freeman v. City of Santa Ana*, 68 F.3d 1180,

26   1189 (9th Cir. 1995)).  As is the case here, malicious prosecution claims may be

27   brought against persons other than prosecutors who have wrongfully caused

28   charges to be filed.  *Id.*

**ORDER DENYING IN PART, RESERVING IN PART MOTION TO
STRIKE *INTER ALIA*  \* 13**

1   The "malice" element of a malicious prosecution claim "relates to the

2   subjective intent or purpose with which the defendant acted in initiating the prior

3   action[,]" and it is "usually a question of fact for the jury to determine." *Estate of*

4   *Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1030 (9th Cir. 2008) (citations

5   omitted).  However, summary judgment based on lack of malice may still be

6   appropriate "when there is no evidence from which a reasonable fact finder could

7   conclude that the defendant pursued the underlying action with malice." *Id.*

8   Probable cause, in contrast, is a question of law which requires an objective

9   inquiry: "whether a reasonable person would have thought that the [underlying]

10   claim was legally tenable 'without regard to [the defendant's] mental state.'" *Id.*

11   at 1031 (citation omitted).  "'[W]hen the state of the defendant's factual

12   knowledge is resolved or undisputed, it is the court which decides whether such

13   facts constitute probable cause or not.'" *Id.* (citation omitted).

14   Defendant MacDonald argues that Mrs. Ciske has no constitutional right "to

15   be free from criminal prosecution except upon probable cause." *Albright*, 510

16   U.S. at 268.  However, a malicious prosecution claim is still cognizable under §

17   1983 so long as the plaintiff proves the defendants "acted for the purpose of

18   depriving him of a 'specific constitutional right[.]'" *Awabdy*, 368 F.3d at 1069.

19   Plaintiffs assert MacDonald acted for the purpose of depriving her of her First

20   Amendment right to file a complaint against him.  Plaintiffs submit that Mrs.

21   Ciske's First Amendment rights were implicated when MacDonald gave her the

22   citation, and they point out that there is "abundant circumstantial evidence" that

23   this was the reason MacDonald charged her.

24   Defendant MacDonald also argues that Mrs. Ciske's malicious prosecution

25   claim is based on her assertion that he provided false information and false

26   testimony at her trial about her jumping on his back.  He submits that her claim is

27   therefore precluded because of the jury's finding in her case that she used

28   "reasonable force" to defend her husband.  He maintains she is collaterally

**ORDER DENYING IN PART, RESERVING IN PART MOTION TO
STRIKE** *INTER ALIA* **\* 14**

1  estopped from arguing now that she did not jump on his back.  Defendant

2  MacDonald is essentially attempting to erase this issue of fact from this Court's

3  record by virtue of that jury's holding.

4        Plaintiffs maintain that MacDonald cannot establish the first necessary

5  element for collateral estoppel to apply: identity of issues.  *See State v. Williams*,

6  132 Wn.2d 248, 254 (1997) (listing the elements for collateral estoppel under

7  Washington law as "(1) the issue decided in the prior adjudication must be

8  identical with the one presented in the second; (2) the prior adjudication must have

9  ended in a final judgment on the merits; (3) the party against whom the plea of

10  collateral estoppel is asserted must have been a party or in privity with a party to

11  the prior litigation; and (4) application of the doctrine must not work an

12  injustice").  Plaintiffs assert that MacDonald cannot use Mrs. Ciske's acquittal to

13  curtail her rights in a later civil case based on the jury's finding and inferences

14  from it.  Mrs. Ciske stands by her assertion that she did not jump on MacDonald's

15  back, and she submits that the jury's finding that she acted in self-defense does not

16  collaterally estop her from making this assertion.

17        The Court finds that MacDonald has not established all the elements of

18  collateral estoppel so as to preclude the Court's consideration of the parties'

19  factual dispute regarding the events leading to the issuance of Mrs. Ciske's

20  citation for obstruction.[5]  Consequently, taking Plaintiffs' version of the facts as

21  true, as the Court must in summary judgment, the Court may assume Mrs. Ciske

22  did not jump on MacDonald's back at the time of Mr. Ciske's arrest.  The Court

23  finds that there are genuine issues of material fact regarding probable cause.

24        Plaintiffs further assert that there is sufficient evidence on the record to raise

25

26        [5]  Under RCW § 9A.76.020, "[a] person is guilty of obstructing a law

27  enforcement officer if the person willfully hinders, delays, or obstructs any law

28  enforcement officer in the discharge of his or her official powers or duties."

**ORDER DENYING IN PART, RESERVING IN PART MOTION TO**
**STRIKE *INTER ALIA*  * 15**

1  an inference of malice and of a motivation to deprive her of her constitutional

2  right to file a complaint.  MacDonald counters that Plaintiffs' conclusion that he

3  cited her to silence her criticism of him is pure speculation, and that the facts show

4  that he issued the citation before she made any complaint and before he had any

5  knowledge that she would make a complaint.  Defendant argues that a party

6  cannot defeat a motion for summary judgment with evidence that amounts to

7  speculation and conjecture.  *O.S.C. Corp. v. Apple Computer, Inc.*, 792 F.2d 1464,

8  1466-67 (9th Cir. 1986).

9       From the pleadings, it is obvious that the parties disagree as to the facts

10 underlying Mrs. Ciske's citation and MacDonald's motivation for issuing the

11 citation.  Whether MacDonald acted with "malice" is generally a question for the

12 jury, and the Court finds that the evidence showing the timing of the events on the

13 night in question[6] in conjunction with the evidence of MacDonald's past letters of

14 reprimand is sufficient to create an inference that MacDonald was motivated to

15 issue the citation in order to deprive Mrs. Ciske of her constitutional right to file a

16 complaint.  Accordingly, the Court finds that genuine issues of material fact exist

17 and summary judgment is not appropriate for Mrs. Ciske's § 1983 malicious

18 prosecution claim.

19                **c.    Municipal Liability**

20      "[A] municipality cannot be held liable *solely* because it employs a

21 tortfeasor—or in other words, a municipality cannot be held liable under § 1983

22 on a *respondeat superior* theory."  *Monell v. Dep't of Social Servs. of City of New*

23 *York*, 436 U.S. 658, 691 (1978) (emphasis in original). "[I]t is when execution of a

24

_____

25      [6] Mrs. Ciske was present when MacDonald was arresting Mr. Ciske at

26 Maryhill Winery.  He did not issue a citation there or ask for her identification.

27 MacDonald instead issued citation after Mrs. Ciske went to the Sheriff's Office to

28 see about her husband and complain about MacDonald's treatment of him.

**ORDER DENYING IN PART, RESERVING IN PART MOTION TO
STRIKE *INTER ALIA*  * 16**

1  government's policy or custom . . . inflicts the injury that the government as an

2  entity is responsible under § 1983." *Id.* at 694. "A policy is a deliberate choice to

3  follow a course of action . . . made from among various alternatives by the official

4  or officials responsible for establishing final policy with respect to the subject

5  matter in question." *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir.

6  2006) (internal quotation marks and citation omitted).

7      Plaintiffs correctly point out that at the time MacDonald issued the citation

8  and initiated the prosecution of Mrs. Ciske, he was acting under color of state law

9  and in his capacity as an employee of Klickitat County.  Plaintiffs' assert Klickitat

10  County had a policy of inaction regarding MacDonald's misconduct, and that

11  Sheriff Mace essentially ratified MacDonald's conduct.  Plaintiffs discuss at great

12  length in their response memorandum MacDonald's relationship, personal and

13  professional, with Sheriff Mace, and they allege that under Sheriff Mace the

14  County's disciplinary process was flawed and that Sheriff Mace's deliberate

15  indifference of MacDonald's repeated and regular misconduct was the "moving

16  force" behind MacDonald's violation of Mrs. Ciske's constitutional rights.  The

17  Court cannot determine whether Plaintiffs are raising a ratification argument for

18  municipal liability or a failure to act theory, but it finds that neither supports a

19  finding of municipal liability.

20      The ratification doctrine originated as a basis for municipal liability in *St.*

21  *Louis v. Praprotnik*, 485 U.S. 112 (1988).  *Haugen v. Brosseau*, 351 F.3d 372, 393

22  (9th Cir. 2003).  A plurality of the Supreme Court in *Proprotnik* stated that "[i]f

23  the authorized policymakers approve a subordinate's decision and the basis for it,

24  their ratification would be chargeable to the municipality because their decision is

25  final." *Praprotnik*, 485 U.S. at 127.  Therefore, "[a] single decision by a

26  municipal policymaker 'may be sufficient to trigger section 1983 liability under

27  *Monell*, even though the decision is not intended to govern future situations, . . .

28  but the plaintiff must show that the triggering decision was the product of a

**ORDER DENYING IN PART, RESERVING IN PART MOTION TO
STRIKE** *INTER ALIA* * 17

1    'conscious, affirmative choice' to ratify the conduct in question." *Haugen*, 351

2    F.3d at 393 (internal citation omitted).

3         Plaintiffs point to one incident not mentioned above in which they claim

4    MacDonald falsely charged an individual, Nathan Lane, after he attempted to file a

5    complaint with the Sheriff's Office. Klickitat County and MacDonald dispute

6    Plaintiffs' version of the events surrounding the Lane incident. Looking at the two

7    exhibits related to the Lane incident, Exhibits 41 and 59, it is clear that Mr. Lane

8    did not file a written complaint and that he was not issued a citation nor was he

9    aware of any potential for a citation. Exhibit 41 is the police report generated after

10   Mr. Lane called the Klickitat County Sherrif's Office. The report, which is date

11   and time stamped to show it was written on August 24, 2003, at 23:24:08, states

12   that Mr. Lane called dispatch at 20:27, approximately three hours before the report

13   was written, to report that Deputy MacDonald assaulted him at the Maryhill

14   Winery. The reporting officer attempted to contact Mr. Lane, but the number he

15   had was not in service. The reporting officer also contacted MacDonald, who said

16   he had already drawn a case number on the matter and believed that Mr. Lane

17   should have been arrested. Nothing else came of the incident. Mr. Lane did not

18   file a complaint or ever contact the Sheriff's Office again, and MacDonald did not

19   issue a citation. Sheriff Mace testified that he was not aware of the incident. (Ct.

20   Rec. 137, at 261; Mace Dep., at 86).

21        Taking Plaintiffs' version of the facts surrounding the Lane incident as true,

22   and assuming MacDonald did assault Mr. Lane as Mr. Lane claims in his affidavit,

23   the Court cannot infer from these facts that the County's and/or Sheriff Mace's

24   failure to discipline MacDonald in this one specific instance is an adequate basis

25   for municipal liability under *Monell*. *See Haugen*, 351 F.3d at 393 (finding that

26   "[a]lthough some municipal pronouncements ratifying a subordinate's action

27   could be tantamount to the announcement or confirmation of a policy for purposes

28   of *Monell*, here there are no facts in the record that suggest that the single failure

**ORDER DENYING IN PART, RESERVING IN PART MOTION TO
STRIKE *INTER ALIA* \* 18**

1   to discipline [the defendant] rises to the level of such a ratification.").

2   Considering the short amount of time between Mr. Lane's call and the writing of

3   the report, along with the lack of follow up on any party's behalf, Plaintiffs have

4   not shown any "triggering decision" that ratified MacDonald's conduct, let alone

5   that the decision was made consciously and affirmatively to ratify his conduct.

6   Although there may be a genuine issue of fact regarding what happened between

7   MacDonald and Mr. Lane on August 24, 2003, it is not material to Klickitat

8   County's liability for MacDonald's actions involving Mrs. Ciske.

9        To impose liability against a municipality for its failure to act, a plaintiff

10  must show: "(1) that a county employee violated the plaintiff's constitutional

11  rights; (2) that the county has customs or policies that amount to deliberate

12  indifference; and (3) that these customs or policies were the moving force behind

13  the employee's violation of constitutional rights." *Long*, 442 F.3d at 1186. The

14  Ninth Circuit has noted that "a municipal defendant's failure to fire or reprimand

15  officers" may evidence a policy of deliberate indifference to their misconduct.

16  *Henry v. County of Shasta*, 132 F.3d 512, 520 (9th Cir. 1997).

17       Klickitat County lists the various disciplinary sanctions issued to

18  MacDonald during his tenure at the Sheriff's Department under Sheriff Mace.

19  •    He received a letter of reprimand on July 2, 2001, for disobeying a

20       superior's orders.

21  •    On August 6, 2001, he received another letter of reprimand for

22       disobeying a directive from Sheriff Mace about releasing information.

23  •    On March 21, 2002, he received a verbal warning for making a

24       statement to a citizen that she believed was inappropriate.

25  •    On October 3, 2003, he received a written reprimand for using

26       inappropriate language with a suspect.

27  •    On October 23, 2003, he received a three-day unpaid suspension for

28       inappropriately using his firearm as an impact weapon during an

**ORDER DENYING IN PART, RESERVING IN PART MOTION TO STRIKE *INTER ALIA* * 19**

1    incident.

2    Klickitat County submits that there is no evidence that MacDonald was not

3    properly supervised, trained, or disciplined.

4    Plaintiffs submit in their Statement of Facts that "[w]hen citizen complaints

5    were made, and even when they were sustained, they were not tracked or counted

6    on the deputy's record unless the undersheriff happened to bring them up at the

7    time of the deputy's annual evaluation." (Ct. Rec. 138, at 30, ¶149).  In support,

8    they cite to two pages of Exhibit 45 that do not exist.  Plaintiffs' assertion

9    concerned the Court, for if there were evidence that this was so, then municipal

10   liability would be a close question.  Consequently, the Court searched Plaintiffs'

11   exhibits for any evidence that would support such a conclusion[7] and found no

12   _____

13   [7] The Court examined Exhibit 46, which contains excerpts of the deposition

14   of Undersheriff Erik Anderson.  During that deposition, the witness examined

15   MacDonald's performance evaluations from two years in which citizens

16   complained about his behavior on two occasions.  The performance evaluations

17   did not reference the complaints at all.  The witness, who did not prepare the

18   performance evaluations, speculated that "we weren't always in the field as

19   sergeants kept apprised of complaints . . . .  We weren't always being informed as

20   to what our people were being counseled for or disciplined. . . .  But if

21   [MacDonald] had a complaint during this evaluation period, especially one that

22   was founded, you would think it would be here.  I don't know why it is not." (Ct.

23   Rec. 137, at 203; Anderson Dep. at 94).  This testimony does not establish that the

24   Sheriff's Office had a policy of not tracking or counting citizen complaints.

25   The Court also looked at Exhibit 54, which contains excerpts of the

26   deposition of Sheriff Mace.  This deposition includes much discussion of the

27   handling of citizen complaints, but it nowhere states that citizen complaints were

28   not properly investigated. (See Ct. Rec. 137, at 253-58; Mace Dep. at 35-44, 59-

ORDER DENYING IN PART, RESERVING IN PART MOTION TO
STRIKE *INTER ALIA* * 20

1  admissible evidence that would support it.

2      Accordingly, taking Plaintiffs' version of the facts as true, there is

3  insufficient evidence of a policy or custom that amounts to deliberate indifference

4  of or a ratification of MacDonald's actions, nor is there sufficient evidence that

5  such a policy or custom was the driving force behind MacDonald's decision to

6  issue a citation to Mrs. Ciske.  The Court therefore grants Klickitat County's

7  motion for summary judgment on this claim.

8              **2.    State Law Malicious Prosecution Claim**

9      To succeed on a claim for malicious prosecution in Washington, a plaintiff

10  must allege and prove the following:

11      (1) that the prosecution claimed to have been malicious was instituted
     or continued by the defendant; (2) that there was want of probable
12   cause for the institution or continuation of the prosecution; (3) that
     the proceedings were instituted or continued through malice; (4) that
13   the proceedings terminated on the merits in favor of the plaintiff, or
     were abandoned; and (5) that the plaintiff suffered injury or damage
14   as a result of the prosecution.

15  *Bender v. City of Seattle*, 99 Wn.2d 582, 593 (1983) (quoting *Gem Trading Co. v.*

16  *Cudahy Corp.*, 92 Wn.2d 956, 962-63 (1979)).  Plaintiff bears the burden of

17  proving "malice" in a malicious prosecution case.  *Id.*  "Malice" has become a

18  term of art in malicious prosecution cases, and it may be established

19      by proving that the prosecution complained of was under taken from
     improper or wrongful motives or in reckless disregard of the rights of
20   the plaintiff.  Impropriety of motive may be established . . . by proof
     that the defendant instituted the criminal proceedings against the
21   plaintiff (1) without believing him to be guilty, or (2) primarily
     because of hostility or ill will towards him, or (3) for the purpose of
22   obtaining a private advantage as against him.

23  *Id.* at 594.

24      As discussed above, taking Plaintiffs' version of the facts as true, there exist

25  genuine issues of material fact which preclude judgment as a matter of law on

26  their State law malicious prosecution claim.  The Court therefore denies

27  _____

28  60, 64-69).

**ORDER DENYING IN PART, RESERVING IN PART MOTION TO
STRIKE *INTER ALIA*  * 21**

1  Defendants' motions for summary judgment on this claim.

2        Accordingly, **IT IS HEREBY ORDERED**

3        1.  The motions offered by and against Defendants House of Blues, Maryhill

4  Winery, and Maryhill Amphitheatre (Ct. Recs. 48, 84, 112, 144, 146, 165, 171, &

5  174) are **DENIED as moot**.

6        2.  Defendant Klickitat County's Motion for Summary Judgment (Ct. Rec.

7  68) is **GRANTED in part, DENIED in part**.  The Court grants summary

8  judgment and dismisses Plaintiffs' claims under § 1983, but denies summary

9  judgment on her State law malicious prosecution claim.

10        3.  Defendant Klickitat County's Motion for Joinder in Defendant Ken

11  MacDonald's Motion to Strike (Ct. Rec. 161) is **GRANTED**.

12        4.  Defendant Ken MacDonald's Motion for Summary Judgment (Ct. Rec.

13  74) is **GRANTED in part, DENIED in part**.  The Court grants summary

14  judgment and dismisses Plaintiffs' Fourth Amendment claim under § 1983, but

15  denies Defendant's motion for summary judgment on Plaintiffs' Fourteenth

16  Amendment claim under § 1983 and on Plaintiffs' State law malicious prosecution

17  claim.

18        5.  Defendant Ken MacDonald's Motion to Strike (Ct. Rec. 152) is

19  **GRANTED in part, DENIED in part, RESERVED in part**, as explained in the

20  above discussion.

21        6.  Defendant Ken MacDonald's Motion to Expedite Regarding Motion to

22  Strike (Ct. Rec. 178), Motion to Expedite Regarding Overlength Brief (Ct. Rec.

23  180) and Motion for Leave to File Excess Pages (Ct. Rec. 182) are **GRANTED**.

24  ///

25  ///

26  ///

27  ///

28  ///

**ORDER DENYING IN PART, RESERVING IN PART MOTION TO
STRIKE *INTER ALIA*  \* 22**

1    **IT IS SO ORDERED.** The District Court Executive is hereby directed to

2    enter this Order and to furnish copies to counsel.

3    **DATED** this ___ day of April, 2008.

4

5                          ROBERT H. WHALEY
                  Chief United States District Judge
6

7    Q:\CIVIL\2006\Ciske v. House of Blues\SJ.ord.wpd

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ORDER DENYING IN PART, RESERVING IN PART MOTION TO STRIKE *INTER ALIA*  * 23**